1  ELIZABETH S. BALFOUR, Cal. Bar No. 213994
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2    A Limited Liability Partnership
     Including Professional Corporations
3  12275 El Camino Real, Suite 200
   San Diego, California  92130-2006
4  Telephone:    858-720-8900
   Facsimile:    858-509-3691
5  ebalfour@sheppardmullin.com

6  Attorneys for Defendants Winex Investments,
   LLC, William Krusheski, John Sullivan, Robert
7  B. Hydeman, and Emilio Pineda

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  JIM COLLINS and MARYANN          Case No.  08 CV 0051 L CAB
    COLLINS,
11                                   MEMORANDUM OF POINTS AND
                                     AUTHORITIES IN SUPPORT OF
12              Plaintiffs,          DEFENDANTS'

13      v.                           MOTION TO DISMISS THE AMENDED
                                     COMPLAINT AS TO DEFENDANT JOHN
14  WINEX INVESTMENTS, LLC, a        SULLIVAN PURSUANT TO 11 U.S.C.
    Wyoming limited liability company, § 727;
15  WILLIAM KRUSHESKI, an individual,
    JOHN SULLIVAN, an individual,     MOTION TO DISMISS THE FIRST,
16  ROBERT B. HYDEMAN, an            SECOND, THIRD, FOURTH, AND FIFTH
    individual, EMILIO PINEDA, an     CAUSES OF ACTION OF THE AMENDED
17  individual, DOES 1 through 100,   COMPLAINT AS TO DEFENDANTS
    inclusive,                        WINEX INVESTMENTS, LLC, WILLIAM
18                                    KRUSHESKI, AND CRAIG PINEDO,
                Defendants.          PURSUANT TO FEDERAL RULE OF
19                                   CIVIL PROCEDURE 12(b)6; AND

20                                   MOTION TO DISMISS THE AMENDED
                                     COMPLAINT AS TO DEFENDANT
21                                   ROBERT HYDEMAN
                                     PURSUANT TO FEDERAL RULE OF
22                                   CIVIL PROCEDURE 12(b)6.

23                                   **Date:   June 30, 2008**
                                     **Time:  10:30 a.m.**
24                                   **Ctrm:  14**
                                     **Honorable James Lorenz**
25
                                     **Complaint Filed:  December 5, 2007**
26                                   **Complaint Served: December 10, 2007**
                                     **Complaint Removed: January 9, 2008**
27                                   **Amended Complaint Filed: April 3, 2008**

28

1

## TABLE OF CONTENTS

2

Page

3

4

I.      INTRODUCTION .................................................................................................. 1

II.     SUMMARY OF PLAINTIFFS' ALLEGATIONS......................................................... 2

III.    STANDARD ON A MOTION TO DISMISS ................................................................ 2

IV.     DEFENDANT JOHN SULLIVAN HAS RECEIVED A DISCHARGE
        UNDER 11 U.S.C. § 727 AND THEREFORE THIS COMPLAINT
        CANNOT BE MAINTAINED AGAINST HIM ........................................................ 3

V.      PLAINTIFFS' FRAUD-BASED CLAIMS DO NOT SATISFY THE
        PLEADING REQUIREMENTS OF RULE 9(B) OR THE PSLRA .......................... 3

        A.      Rule 9(b) Requires Plaintiffs to Plead Fraud with Particularity...................... 3

        B.      PSLRA Requires Facts be Pled Showing Strong Circumstantial
                Evidence of Deliberately Reckless or Conscious Misconduct........................ 5

        C.      The Court Should Dismiss the First, Second, Third, Fourth, and Fifth
                Causes of Action Against Mr. Krusheski, Mr. Pinedo, and Winex................ 7

                1.      Plaintiff's Third Claim Under Rule 10b-5 Fails to Meet the
                        Heightened Pleading Standard under PSLRA or FRCP 9(b) ............... 7

                2.      The Fourth Claim Under California Corporations Code
                        § 25401 Fails to State a Claim ............................................... 11

                3.      First, Second and Fifth Claims for Misrepresentation and
                        Breach of Fiduciary Duty are Fraud-Based and Must Satisfy
                        Rule 9(b) ............................................................................... 12

VI.     THE AMENDED COMPLAINT CONTAINS NO ALLEGATIONS
        AGAINST ROBERT HYDEMAN; ACCORDINGLY, HE SHOULD BE
        DISMISSED............................................................................................................ 14

TABLE OF AUTHORITIES

**CASES**

Activision Securities Litigation,
   621 F. Supp. 415 (9th Cir. 1985) .................................................................. 2, 12

Admiralty Fund v. Hugh Johnson & Co.,
   677 F.2d 1301 (9th Cir. 1982) ........................................................................ 11

Binder v. Gillespie,
   184 F.3d 1059 (9th Cir. 1999) ........................................................................ 5, 8

Cahill v. Liberty Mutual Ins. Co.,
   80 F.3d 336 (9th Cir. 1996) ............................................................................. 2

Christiansen v. Roddy,
   186 Cal. App. 3d 780 (1986) .......................................................................... 13

DeMarco v. DepoTech Corp.,
   149 F. Supp. 2d 1212 (S.D. Cal. 2001) ........................................................... 4

Diasonics Securities Litigation,
   559 F. Supp. 447 (C.D. Cal. 1984) ........................................................... 11, 12

Dura Pharmaceuticals, Inc. v. Broudo,
   544 U.S. 336 (2005) ......................................................................................... 8

Employees Teamsters Local Pension Trust Fund v. Clorox Co.,
   353 F.3d 1125 (9th Cir. 2004) ......................................................................... 6

Ernst & Ernst v. Hochfelder,
   425 U.S. 185 (1976) ......................................................................................... 5

Kamen v. Lindly,
   94 Cal. App. 4th 197, Section 12(2) ............................................................... 11

Kaplan v. Rose,
   49 F.3d 1363 (9th Cir. 1994) ........................................................................... 4

Lazar v. Superior Court,
   12 Cal. 4th 631 (1996) .......................................................................... 1, 3, 13, 15

McGonigle v. Combs,
   968 F.2d 810 (9th Cir. 1992) ........................................................................... 8

Navarro v. Block,
   250 F.3d 729 (9th Cir. 2001) ........................................................................... 2

No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West
      Holding Corp.,
   320 F.3d 920 (9th Cir. 2003) ........................................................................... 9

Paracor Fin., Inc. v. General Elec. Capital Corp.,
   96 F.3d 1151 (9th Cir. 1996) ........................................................................... 5

In re Dura Pharmaceuticals, Inc. v. Sec. Litig.,
    452 F. Supp. 2d 1005 (S.D. Cal. 2006) ...................................................9, 10
In re Silicon Graphics Inc. Sec. Litig.,
    183 F.3d 970 (9th Cir. 1999) ..........................................................5, 6, 8
In Re Storek,
    355 B.R. 187 (Bankr. N.D. CA 2006) .........................................................3
In re Vantive Corp. Sec. Litig.,
    110 F. Supp. 2d at 1216 ...............................................................3, 9
In re Vantive Corp. Sec. Litig.,
    283 F.3d 1079 (9th Cir. 2002) ................................................................6
Vess v. Ciba-Geigy Corp., U.S.A.,
    317 F.3d 1097 (9th Cir. 2003) .................................................4, 10, 13, 15
Western Mining Council v. Watt,
    643 F.618 (9th Cir. 1981) ....................................................................3
Yourish v. California Amplifier,
    191 F.3d 983 (9th Cir. 1999) ...............................................................4, 13

**STATUTES**

11 U.S.C. Section 727 ............................................................................3

15 U.S.C. Section 78j ............................................................................5

15 U.S.C. Section 78u-4(b)(1) ...................................................................6

15 U.S.C. Section 78u-4(b)(2) ...................................................................6

15 U.S.C. Section 78u-4(b)(3)(A) ................................................................7

15 U.S.C. Section 77l .............................................................................11

Private Securities Litigation Reform Act of 1995 ...........................................2, 6

Securities and Exchange Act Section 10b ..........................................................5

Securities and Exchange Act Rule 10b-5 .............................................1, 2, 4, 5, 7, 8

California Corporate Securities Law of 1968 ......................................................1

California Corporation Code § 25401 ...............................................2, 11, 14, 15

**RULES**

Federal Rules of Civil Procedure 9(b) .......................................3, 4, 7, 10, 11, 12, 13

Federal Rule of Civil Procedure 12(b)(6) ........................................................2

1

**REGULATIONS**

2

17 C.F.R. § 240.10b-5 ....................................................................................... 5, 11, 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

POINTS AND AUTHORITIES MOTION TO DISMISS
08 CV 0051 L CAB

1    Defendants Winex Investments, LLC, William Krusheski, John Sullivan,

2  Robert B. Hydeman, and Emilio Pineda (collectively "Defendants") submit this

3  Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiffs'

4  Amended Complaint in its entirety as to Defendants John Sullivan and Robert Hydeman,

5  and their Motion to Dismiss Plaintiff's First (intentional misrepresentation), Second

6  (negligent misrepresentation), Third (violation of Rule 10b-5 of the Securities and

7  Exchange Act), Fourth (violation of the California Corporate Securities Law of 1968), and

8  Fifth (breach of fiduciary duty) causes of action as to Defendants Winex Investments,

9  LLC, William Krusheski, and Craig Pinedo.

10

11    **MEMORANDUM OF POINTS AND AUTHORITIES**

12

13  **I.    INTRODUCTION**

14

15    Plaintiffs Jim and MaryAnn Collins ("Plaintiffs") were looking for an

16  investment opportunity that had the potential to provide them with very high returns.

17  They transferred $50,000 to Winex Investments, LLC, pursuant to an offering made

18  through a private placement.   (Amended Complaint ¶ 18.)  Plaintiffs' funds, along with

19  those of other investors (including defendants John Sullivan and Robert Hydeman), were

20  combined in a Winex Investments, LLC brokerage account maintained by FC Stone.  The

21  funds pooled in Winex Investments, LLC were to be traded on the foreign currency

22  exchange markets, in derivatives, and on margin.  An error by a bank in executing a large

23  trade placed by the trading agent, Sonador Capital Management ("Sonador"), resulted in a

24  substantial decrease in the value of the Winex Investments, LLC account, to the detriment

25  of both Plaintiffs and the individual defendants.  (Amended Complaint ¶ 20.)

26    Plaintiffs now claim they would not have put their money into Winex

27  Investments, LLC had they known that the value of their investment would decrease the

28  way it did.  Nor would the individual defendants.  The fact that Plaintiffs did not achieve

1  the high profit margin they were seeking does not mean that Defendants engaged in

2  securities fraud.  The allegations in the Amended Complaint fail to state a claim under the

3  Private Securities Litigation Reform Act of 1995 or under California Corporation Code

4  § 25401, nor do they state a claim for intentional misrepresentation, negligent

5  misrepresentation, or breach of fiduciary duty.

6

7  **II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS**

8

9          Plaintiffs allege that they invested $50,000 with Winex Investments, LLC.

10  (Amended Complaint ¶ 18.)  They allege that they were "promised daily internet access

11  with personal password protected account information."  (Id. ¶ 23.)  They also allege they

12  were told, in the Private Placement Memorandum ("PPM"), that the trading agent used by

13  Winex "will 'apply strict, systematic and non-negotiable discipline in exiting losses'

14  through several defensive measures, including 'conservative policies on margin.'" (Id.

15  ¶ 19.)  Plaintiffs allege they relied on these promises made by the Defendants.  (Id. ¶ 24.)

16  Plaintiffs allege they would not have invested in Winex had they known that the two

17  statements (about the daily internet access and future use of conservative trading policies)

18  were untrue.  (Id. ¶ 22.)   These fraud-based allegations are the only support for Plaintiffs'

19  claims under Rule 10b-5 and California Corporations Code § 25401, and for intentional

20  misrepresentation, negligent misrepresentation, and breach of fiduciary duty.

21

22  **III.    STANDARD ON A MOTION TO DISMISS**

23

24          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

25  sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In

26  reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all

27  factual allegations and must construe them in the light most favorable to the nonmoving

28  party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  However,

POINTS AND AUTHORITIES MOTION TO DISMISS
08 CV 0051 L CAB

1 legal conclusions need not be taken as true merely because they are cast in the form of

2 factual allegations. <u>Western Mining Council v. Watt</u>, 643 F.618, 624 (9th Cir. 1981).

3

4 **IV.    DEFENDANT JOHN SULLIVAN HAS RECEIVED A DISCHARGE UNDER**

5       **11 U.S.C. § 727 AND THEREFORE THIS COMPLAINT CANNOT BE**

6       **MAINTAINED AGAINST HIM**

7

8         This complaint was served on John Sullivan on or around December 10,

9 2007. On December 31, 2007, Mr. Sullivan filed for Chapter 7 bankruptcy. Request for

10 Judicial Notice ("RJN") at Exh. A. Mr. Sullivan identified on his bankruptcy schedules

11 Plaintiffs' claims against him. RJN Exh. B. Plaintiffs had notice of the bankruptcy filing

12 because they filed a motion for relief from stay on February 21, 2008. RJN Exh. C. On

13 April 8, 2008, the Court granted Mr. Sullivan a discharge. RJN Exh. D. Plaintiffs' pursuit

14 of any claims against Mr. Sullivan is prohibited by the discharge provisions of 11 U.S.C.

15 § 727. Where a lawsuit relates to conduct that occurred prior to the debtor's bankruptcy

16 petition, a discharge under Section 727 precludes continued pursuit of the claim. <u>See In</u>

17 <u>Re Storek</u>, 355 B.R. 187, 190 (Bankr. N.D. CA 2006). Accordingly, the Amended

18 Complaint should be dismissed as to John Sullivan.

19

20 **V.    PLAINTIFFS' FRAUD-BASED CLAIMS DO NOT SATISFY THE**

21       **PLEADING REQUIREMENTS OF RULE 9(B) OR THE PSLRA**

22

23       **A.    Rule 9(b) Requires Plaintiffs to Plead Fraud with Particularity**

24

25         Plaintiffs allege that William Krusheski was the Chief Financial Officer of

26 Winex, that he provided Plaintiffs with the PPM related to a possible investment in Winex,

27 and that he told Plaintiffs they would get internet access to their Winex account and that

28 the trading agent would use conservative policies on margin trading. (Amended

1    Complaint ¶ ¶ 16, 22, 23, 25).  Plaintiffs allege that Craig Pinedo was a "financial and

2    investment advisor" to Plaintiffs, that he persuaded them to refinance the debt on their

3    home in order to invest in Winex, and that he told them the trading agent would follow

4    "risk management policies" including conservative policies on margin calls.  (Amended

5    Complaint ¶ ¶ 15, 16, 22, 25).  These allegations are not sufficient to state a claim for

6    securities violations against Mr. Krusheski or against Mr. Pinedo.

7         Rule 9(b) states in relevant part that "[i]n all averments of fraud or mistake,

8    the circumstances constituting fraud or mistake shall be stated with particularity."

9    F.R.C.P. 9(b).  Thus, Rule 9(b) requires that parties must "be specific enough to give

10   defendants notice of the particular misconduct . . . so that they can defend against the

11   charge and not just deny that they have done anything wrong."  <u>Vess v. Ciba-Geigy Corp.,</u>

12   <u>U.S.A.</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).

13        Under Ninth Circuit case law, Rule 9(b) imposes two requirements on

14   complaints alleging fraud, including securities fraud.  First, the basic notice requirements

15   of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and

16   nature of the misleading statements, misrepresentations, or specific acts of fraud."

17   <u>Kaplan v. Rose</u>, 49 F.3d 1363, 1370 (9th Cir. 1994); <u>Vess</u>, 317 F.3d at 1106 (A plaintiff

18   must set forth "the who, what, when, where and how" of the alleged misconduct.").

19   Second, the Rule requires that the complaint "set forth an explanation as to why the

20   statement or omission complained of was false and misleading." <u>Yourish v. California</u>

21   <u>Amplifier</u>, 191 F.3d 983, 993 (9th Cir. 1999).  A complaint may demonstrate the false or

22   misleading character of a statement by identifying inconsistent contemporaneous

23   statements made by the defendants or inconsistent contemporaneous information that was

24   available to the defendants.  <u>Yourish</u>, 191 F.3d at 994; <u>DeMarco v. DepoTech Corp.</u>,

25   149 F.Supp.2d 1212,1223 (S.D. Cal. 2001).  A complaint may not, however, demonstrate

26   that a statement was false or misleading when made "merely by pointing to later

27   inconsistent statements or conditions."  <u>DeMarco</u>, 149 F.Supp.2d at 1223.

28

**B.    PSLRA Requires Facts be Pled Showing Strong Circumstantial Evidence of Deliberately Reckless or Conscious Misconduct**

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful to use in connection with the mails or facilities of interstate commerce any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commissioner may prescribe." 15 U.S.C. § 78j. SEC Rule 10b-5, promulgated under Section 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)  To employ any device, scheme, or artifice to defraud,
>
> (b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In order to properly allege a claim under section 10(b) of the Exchange Act and SEC Rule 10b-5, a plaintiff must state the following:  (1) defendants made a false statement or omission with regard to a material fact; (2) in connection with the purchase or the sale of a security; (3) with scienter; (4) upon which plaintiff reasonably relied; (5) to his/her harm or detriment. Binder v. Gillespie, 184 F.3d 1059, 1063 (9th Cir. 1999), cert. denied, 528 U.S. 1154 (2000); Paracor Fin., Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1157 (9th Cir. 1996). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (1976); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 975 (9th Cir. 1999). With respect to scienter claims under the Securities Act, the court may consider all inferences

1    gleaned from the complaint, including inferences in favor of the moving party.  <u>Employees</u>

2    <u>Teamsters Local Pension Trust Fund v. Clorox Co.</u>, 353 F.3d 1125, 1134 (9th Cir. 2004).

3              Additional regulations governing security fraud claims include the Private

4    Securities Litigation Reform Act of 1995 ("PSLRA" or "Reform Act"), which was

5    established in 1995 to ensure uniform and stringent pleading requirements for securities

6    fraud actions.  The PSLRA specifies the required pleading standard for securities fraud:

7

8              (1)    Misleading statements and omissions

9         In any private action arising under this chapter in which the
          plaintiff alleges that the defendant –
10
          (A) made an untrue statement of a material fact; or
11
          (B) omitted to state a material fact necessary in order to make
12        the statements made, in the light of the circumstances in which
          they were made, not misleading;
13
          the complaint shall specify each statement alleged to have been
14        misleading, the reason or reasons why the statement is
          misleading, and, if an allegation regarding the statement or
15        omission is made on information and belief, the complaint
          shall state with particularity all facts on which that belief is
16        formed.

17        15 U.S.C. §78u-4(b)(1).

18              Thus, the PSLRA requires complaints alleging federal securities fraud to

19    "state with particularity facts giving rise to a strong inference that the defendant acted with

20    the required state of mind." 15 U.S.C. § 78u-4(b)(2).  "The purpose of this heightened

21    pleading requirement was generally to eliminate abusive securities litigation and

22    particularly to put an end to the practice of pleading fraud by hindsight."  <u>In re Vantive</u>

23    <u>Corp. Sec. Litig.</u>, 283 F.3d 1079, 1084 (9th Cir. 2002).  As interpreted by the Ninth

24    Circuit, this language requires a plaintiff to plead particular facts that constitute strong

25    circumstantial evidence of deliberately reckless or conscious misconduct.  <u>In re Silicon</u>

26    <u>Graphics</u>, 183 F.3d at 977, 979.  Recklessness satisfies the scienter requirement only

27    insofar as it reflects some degree of conscious or deliberate misconduct; <i>i.e.</i>, "a degree of

28    recklessness that strongly suggests actual intent."  <u>Id</u>. at 979.  The PSLRA further provides

-6-

1  that "the court shall, on the motion of any defendant, dismiss the complaint if the

2  requirements of paragraphs (1) and (2) are not met."  15 U.S.C. § 78u-4(b)(3)(A).

3

4  **C.    The Court Should Dismiss the First, Second, Third, Fourth, and Fifth**

5  **Causes of Action Against Mr. Krusheski, Mr. Pinedo, and Winex**

6

7  **1.    Plaintiff's Third Claim Under Rule 10b-5 Fails to Meet the**

8  **Heightened Pleading Standard under PSLRA or FRCP 9(b)**

9

10  Plaintiffs allege that Mr. Krusheski and Mr. Pinedo made two types of

11  statements to them which ultimately proved to be "untrue."  These statements were (1) that

12  Plaintiffs would have "daily internet access with personal password protected account

13  information" and (2) that the trading agent, Sonador, would use conservative trading

14  policies.  (Amended Complaint ¶ ¶ 19, 23).

15

16  a.    The Allegations Regarding Daily Internet Access to

17  Account Information Cannot State a Claim Under 10b-5

18

19  The allegations that Defendants made false statements regarding providing

20  Plaintiffs with daily internet access cannot support a claim under Rule 10b-5 because

21  Plaintiffs have failed to allege that (1) the statements were false at the time they were made

22  and (2) that the false statements caused Plaintiffs' loss.

23  Plaintiffs allege that Winex, through the PPM and Mr. Krusheski, through

24  letters and in one or more meetings with Plaintiffs in January 2007, represented that

25  Plaintiffs would be provided "daily internet access with personal password protected

26  account information."  (Amended Complaint ¶ 23).  Plaintiffs allege that "Defendants

27  knew" that the statements regarding daily internet access were false at the time the

28  statements were made because the daily access was never provided.  (Amended Complaint

-7-

1   ¶ 26).   An allegation that a corporate defendant failed to achieve results or deliver on

2   promises, does not, of itself, support 10b-5 liability.  In re Silicon Graphics, Inc. Sec.

3   Litig., 183 F.3d at 988.

4           In order for the alleged misrepresentations to be actionable under Rule 10b-

5   5, Plaintiffs must demonstrate loss causation, or "a causal connection between the material

6   misrepresentation and the loss."  Dura Pharmaceuticals, Inc. v. Broudo 544 U.S. 336, 347

7   (2005).  Loss causation is "equivalent to proximate causation in tort."  Binder v. Gillespie,

8   184 F.3d 1059, 1066 (9th Cir. 1999), quoting McGonigle v. Combs, 968 F.2d 810, 821 (9th

9   Cir. 1992).  To satisfy the requirement for loss causation, a plaintiff must show that the

10  misrepresentation or omission directly caused, "or had something to do with" plaintiff's

11  damages.  Id.  Here, Plaintiffs allege only that they were told that they could obtain daily

12  internet access to their account.  (Complaint ¶  23).  They also allege that the value of their

13  account declined.  (Complaint ¶ 20).  However, Plaintiffs do not allege (and cannot allege)

14  that the alleged misrepresentations regarding internet access caused the decline.

15

16              b.      Allegations Regarding the Trading Agent's Plans to Use

17                      "Conservative Policies" Cannot State a Claim Under 10b-5

18

19          Plaintiffs allege that the PPM contained language stating that Sonador "will

20  'apply strict, systematic and non-negotiable discipline in exiting losses' through several

21  defensive measures, including 'conservative policies on margin.'" (Amended Complaint

22  ¶ 19).  Plaintiffs claim that Winex "through its controlled persons knew that conservative

23  policies on margin calls were not put in place at the time the statements were made and

24  had no intention to do so....This is evident because Sonador's heavy use of margin calls

25  would not have been possible had conservative policies on margin calls been put in

26  place..." (Amended Complaint ¶ 27).  This purported causation argument makes little

27  sense.  Plaintiffs do not allege that Winex or Mr. Krusheski or Mr. Pinedo had any control

28  over the way in which the trading agent handled margin calls or managed trades.  Nor do

-8-

1  Plaintiffs allege that Winex or Mr. Krusheski or Mr. Pinedo knew at the time the PPM was

2  prepared and distributed that Sonador would <u>not</u> implement conservative policies on

3  margin calls.  It is just as plausible that, based on the allegations in the Amended

4  Complaint, Mr. Krusheski and Mr. Pinedo believed the representations to be true at the

5  time they were made, but ultimately, for reasons beyond their control, it was not possible

6  to provide Plaintiffs were daily internet access to their account or for the trading agent,

7  Sonador, to minimize losses on margin calls.

8          Thus, Plaintiffs have failed to properly allege Winex or Mr. Krusheski or Mr.

9  Pinedo knew, at the time the PPM was prepared or circulated, that Sonador would not

10  "apply strict, systematic, and non-negotiable discipline in exiting losses" in trading the

11  Winex funds.  (Amended Complaint ¶ 19).  <u>In re Vantive Corp. Sec. Litig.</u>, 110 F. Supp.2d

12  at 1216.  ("[T]he Reform Act forces plaintiffs to reveal whether they base their allegations

13  on an inference of earlier knowledge drawn from later disclosures or from

14  contemporaneous documents or other facts," preventing pleading fraud by hindsight.)

15          The representation that Sonador "will" execute trades in a particular way is a

16  "forward-looking statement," and therefore Plaintiffs must allege that Defendants made the

17  statement with knowledge of its falsity.  *No. 84 Employer-Teamster Joint Council Pension*

18  *Trust Fund v. America West Holding Corp*., 320 F.3d 920, 936 (9th Cir. 2003) (a "forward-

19  looking statement" is any statement regarding financial projections, management's plans

20  and objectives for future operations, or the assumptions underlying these issues).

21          In addition, Plaintiffs fail to allege with particularity what role Mr. Krusheski

22  or Mr. Pinedo had in making the representations to Plaintiffs about the trading policies that

23  would be implemented by Sonador.  The fact that certain statements appear in the PPM

24  does not mean that particular individuals are responsible for them.  In fact, Mr. Pinedo is

25  not alleged to have any had official role in Winex at all – the Complaint alleges only that

26  he was Plaintiffs' "financial advisor."  And, even if Mr. Krusheski was the Chief Financial

27  Officer of Winex, this does not mean that he can be held responsible for the contents of the

28  PPM.  Individuals may not be held responsible for unattributed corporate statements.  <u>In re</u>

POINTS AND AUTHORITIES MOTION TO DISMISS
                                                                                08 CV 0051 L CAB

1  Dura Pharmaceuticals, Inc. v. Sec. Litig., 452 F.Supp.2d 1005, 1030 (S.D. Cal. 2006).

2          The only other allegation about statements made by defendants regarding the

3  trading policies to be implemented by Sonador is: "Krusheski and Pineda represented to

4  the Plaintiffs that several risk management policies were in place, including conservative

5  policies on margin calls and constant review and analysis of trading and portfolio risks

6  exposure." (Amended Complaint ¶ 25). Rule 9(b) requires that Plaintiffs state the "who,

7  what, when, where and how" of the alleged fraudulent statements. Vess, 317 F.3d at 1106.

8  The Complaint fails to provide any of this detail as to the alleged statements.

9          Finally, Plaintiffs allege they would not have invested with Winex had they

10  known that conservative policies were not in place "due to the increased risk of their

11  investment money." (Amended Complaint ¶ ¶ 28, 37). Plaintiffs were well aware that this

12  investment involved trading on the high-risk foreign currency exchange markets, in

13  derivatives, and on margin. In the Amended Complaint, Plaintiffs quote selectively from

14  the 84-page PPM to give the impression the document emphasized "conservative policies."

15  (Amended Complaint ¶ 19). In fact, the PPM contains dozens of paragraphs that disclose

16  the risks of entering into the investment. For example, under the heading: "Risks Related

17  to the Company's Investment and Trading Strategy," are listed the following disclosures:

18

19          Foreign securities often trade in currencies other than the U.S.
20          dollar, and the Company may directly hold foreign currencies
            and purchase and sell foreign currencies through forward
21          exchange contracts…Some foreign currencies are particularly
            volatile.

22
            The Forex or Derivatives may be more volatile than prices of
23          securities such as stocks and bonds. As a result, the risk of loss
            in trading Forex or Derivative Instruments may be greater…
24

25          The Company may use leverage in its investment program,
26          including the use of borrowed funds and investments in certain
            types of currencies, futures, and options on these instructions
27          and others… Investors should be aware that an investment
            program utilizing leverage is inherently more speculative, with
            a greater potential for losses, than a program that does not
28          utilize leverage."

1    The PPM also explains: "The units are highly speculative, involve a very

2   high risk, and are suitable only for persons of substantial means who have no need for

3   liquidity in this investment…"  It informs a potential investor that he or she must confirm

4   that he or she "can bear and is willing to accept the economic risk of losing the entire

5   investment." Plaintiffs entered into a speculative investment hoping to make money and

6   instead, they lost money.  They now try to claim that Defendants misrepresented to them

7   the character of the investment and that Defendants knew at the time that Plaintiffs would

8   not be provided daily internet access and that Sonador would not exercise discipline in

9   trading to avoid heavy losses.  Their allegations fail to satisfy the heightened pleading

10   standard of Rule 9(b) and the PSLRA.  Accordingly, the Third Cause of Action for

11   violation of Rule 10b-5 should be dismissed.

12

13        **2.      The Fourth Claim Under California Corporations Code § 25401**

14             **Fails to State a Claim**

15

16    California Corporations Code § 25401 prohibits the offer or sale of a security

17   by means of any oral or written communication which contains a materially false or

18   misleading statement.   This provision is similar to Section 12(2) of the Securities Act of

19   1933 (15 U.S.C. § 77l).  Where California law is modeled on federal laws, federal

20   decisions interpreting similar statutes are usually strong persuasive precedent on

21   construction of state laws. <u>Kamen v. Lindly</u>, 94 Cal.App.4[th] 197, 209 (2001).  Section

22   12(2) requires that the defendant be the "seller" of the security.  The Ninth Circuit has held

23   that, to allege a violation of Section 25401, plaintiff must show the defendant was in strict

24   privity with plaintiff; liability is limited to sellers of the security.  <u>Admiralty Fund v. Hugh</u>

25   <u>Johnson & Co</u>., 677 F.2d 1301, 1311 n.12 (9th Cir. 1982).  In <u>Diasonics Securities</u>

26   <u>Litigation</u>, plaintiffs alleged that defendants were officers and directors of the company

27   and substantially participated in preparing the prospectus that was alleged to contain

28   misrepresentations.  But, because the plaintiffs failed to allege actual involvement in the

1    sales of the securities, plaintiffs could not state a claim for violation of Section 12(2).

2    Diasonics Securities Litigation, 559 F.Supp. 447, 458 (C.D. Cal. 1984).

3          Here, Plaintiffs have not alleged any participation by any of the individual

4    defendants in the drafting of the PPM or in the sale of any securities.  A claim under

5    Section 25401 requires allegations that the defendants acted in a "seller status."  Activision

6    Securities Litigation, 621 F.Supp. 415, 427 (9th Cir. 1985).  Plaintiffs have not included

7    any such allegations in the Amended Complaint.  The Amended Complaint alleges only

8    that Mr. Pinedo and Mr. Krusheski communicated with Plaintiffs about the possibility of

9    investing in Winex Investments; it does not allege they sold Plaintiffs a security. Thus, the

10   Fourth Cause of Action should be dismissed as against Mr. Krusheski and Mr. Pinedo.

11   The Fourth Cause of Action should also be dismissed as to Winex, because Plaintiffs

12   alleged only that they "invested in" Winex, not that Winex issued them securities.

13   Moreover, even if the Court interprets the allegations in the Complaint to mean that Winex

14   directly sold securities to Plaintiffs, Plaintiffs have failed to allege that any material

15   misrepresentations were made by Winex in conjunction with the sale.

16

17          **3.    First, Second and Fifth Claims for Misrepresentation and Breach**

18          **of Fiduciary Duty are Fraud-Based and Must Satisfy Rule 9(b)**

19

20          The first claim addressed in the Complaint is for "intentional

21   misrepresentation."  The basis for this claim is the same as that asserted as a violation of

22   Rule 10b-5: that Plaintiffs were told (1) they would have daily internet access to their

23   account and (2) that Sonador would implement conservative trading policies regarding

24   margin calls.  (Amended Complaint ¶ ¶ 19, 23).   The fact that Plaintiffs do not specifically

25   seek relief under the federal securities laws in this cause of action does not relieve them of

26   the obligation to plead fraud with particularity.  Rule 9(b)'s pleading requirements apply

27   with equal force to Plaintiff's intentional misrepresentation claim.  Indeed, the pleading

28   standard under California common-law is consistent with this heightened requirement.

1    Lazar v. Superior Court, 12 Cal.4th 631, 645 (1996) (the particularity requirement

2    necessitates pleading facts which "show how, when, where, to whom, and by what means

3    the representations were tendered.")

4            Plaintiffs fail to plead any detail regarding the alleged intentional

5    misrepresentations.  Although the Complaint states that certain meetings occurred during a

6    particular time period (Complaint ¶ 23), it does not state who attended what meetings, or

7    what transpired at particular meetings.  A complaint, to properly allege a claim for

8    intentional misrepresentation, must still "set forth what is false or misleading about a

9    statement, and why it is false…[and] why the statement or omission complained of was

10   false or misleading."  Yourish, 191 F.3d at 993.  Rule 9(b), regardless of its application

11   towards securities claims, poses a heightened pleading standard to all fraud-based claims.

12   Accordingly, the Court should dismiss the first claim for intentional misrepresentation.

13           Plaintiffs also bring a claim for negligent misrepresentation.  This second

14   cause of action is supported by only one allegation: "As a direct and proximate result of

15   Defendants' misrepresentation, Plaintiffs have been damaged in an amount in excess of

16   $100,000 according to proof at trial." (Complaint ¶ 32).  There is no discussion of any of

17   the facts that would actually support a claim for negligent misrepresentation, such as what

18   specific representations were made, that Defendants made the representations without any

19   reasonable grounds for believing them to be true, that Plaintiffs reasonably relied, and that

20   there was a link between Plaintiffs' reliance and damages suffered.  See *Christiansen v.*

21   *Rodd*y, 186 Cal.App.3d 780, 785-86 (1986).  Accordingly, the Second Cause of Action for

22   Negligent Misrepresentation fails to state a claim and should be dismissed.

23           Plaintiffs' fifth cause of action for breach of fiduciary duty is based on the

24   same fraud allegations intended to support the securities claims.  Although fraud is not an

25   essential element of a claim for breach of fiduciary duty, a claim may nonetheless "sound

26   in fraud" if the claims specifically allege fraud or "alleg[e] facts that necessarily constitute

27   fraud (even if the word 'fraud' is not used)."  Vess, 317 F.3d at 1105.

28

-13-

1
2
3
4
5

> In cases where fraud is not a necessary element of the claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

6
7
8
9
10

The theme and central allegations in the Complaint are that Plaintiffs were promised daily internet access to their accounts and that Sonador would implement a conservative policy on margin calls. The breach of fiduciary duty claim is also premised on these fraud-based allegations. Indeed, the breach of fiduciary duty itself references "fraud." (Amended Complaint ¶ 53).

11
12
13
14
15
16
17
18

Furthermore, the Complaint fails to allege any facts supporting the allegation that there existed any relationship of trust and confidence based on each Defendants' particular role or duty. The Complaint simply contains a conclusory allegation that "Defendants owed Plaintiffs a fiduciary duty to account for the Plaintiffs' investment with Winex." (Complaint ¶ 49). On a motion to dismiss, legal conclusions like this one are not to be taken as true; rather, Plaintiffs are required to plead factual allegations. Defendants request that the Court dismiss the fifth cause of action for breach of fiduciary duty.

19
20
21

## VI.    THE AMENDED COMPLAINT CONTAINS NO ALLEGATIONS AGAINST ROBERT HYDEMAN; ACCORDINGLY, HE SHOULD BE DISMISSED

22
23
24
25
26
27
28

The only time Mr. Hydeman is mentioned in the Complaint is in the jurisdictional allegations, where Mr. Hydeman is described as "Chief Executive Officer of Defendant Winex Investments, LLC" and Plaintiffs allege "he has availed himself of the use of California for hosting his business." (Amended Complaint ¶ 4). Mr. Hydeman is included in the First (Intentional Misrepresentation), Fourth (California Corporations Code § 25401), and Fifth (Breach of Fiduciary Duty) Causes of Action. However, his name

-14-

1  never once appears in any of the factual allegations for these claims.  It is not sufficient, to

2  withstand a motion to dismiss, to assert claims generally against "all Defendants."

3          In order to properly allege that a defendant engaged in fraud, Plaintiffs must

4  set forth the role of each defendant in the alleged fraud because each defendant is entitled

5  to be informed of the specific acts or omissions which he must defend.  Vess, 317 F.3d at

6  1106; Lazar, 12 Cal.4th at 645.  The Amended Complaint does not describe what role, if

7  any, Mr. Hydeman had in Winex, other than to allege he had the title of "Chief Executive

8  Officer."  Nor does the Amended Complaint even allege that Plaintiffs have ever met or

9  had any communications at all with Mr. Hydeman.  It is therefore absurd for them to be

10 able to assert causes of action against him for intentional misrepresentation under a

11 common law theory or under Section 25401, or for breach of fiduciary duty.  Accordingly,

12 the Court should dismiss the claims in the Amended Complaint against Mr. Hydeman.

13

14 **IV.    CONCLUSION**

15          For the foregoing reasons, Defendants respectfully request that the Court

16 dismiss the Amended Complaint in its entirety as to Defendants John Sullivan and Robert

17 Hydeman and dismiss Plaintiffs' First, Second, Third, Fourth, and Fifth claims for relief

18 against Winex, Mr. Krusheski, and Mr. Pinedo.

19

20 DATED: April 23, 2008

21                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

22

23                    By      /s/ Elizabeth Balfour

24                          Attorneys for Defendants
                            e-mail:  ebalfour@sheppardmullin.com

25

26

27

28

-15-